IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUIS ENRIQUE CRISTAIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-2462 |
| | § | |
| HUNTER BUILDINGS & | § | |
| MANUFACTURING, LP, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Luis Enrique Cristain sued his former employer, Hunter Buildings & Manufacturing, LP, alleging that it violated the Age Discrimination in Employment Act and the antiretaliation provisions of the Texas Workers' Compensation Act when it terminated him two weeks after he was injured on the job. Hunter moved for summary judgment, and Cristain responded. (Docket Entry Nos. 17, 18). Based on the parties' motion and response, the record, and the applicable law, Hunter's motion for summary judgment is denied.

Docket call will proceed as scheduled on **July 6, 2017,** at **2:00 p.m.** The reasons for the ruling are explained below.

**I.    Background**

Hunter Buildings is a Houston-based company that designs and builds modular blast-resistant buildings. (Docket Entry No. 17 at 2). Hunter hired Cristain in August 2014 as a "Helper" in the Outfitting Department. (*Id.*) His duties were primarily manual labor. (*Id.*) Cristain was 55 years old when hired; the next oldest worker on his work team was approximately 42. (Docket Entry No. 18, Ex. 2 at 3).

On February 5, 2015, Cristain was working in an unfinished modular building on a six-foot high scaffold when the scaffold fell out from under him. (Docket Entry No. 17 at 3). According to Cristain, the scaffold hit him on the leg and lower back as it fell. (Docket Entry No. 18 at 8). A coworker contacted Kevin Edmonds, Hunter's Health, Safety, Security, and Environmental Manager, after the incident. (*Id.* at 8–9). Edmonds found that Cristain was not bleeding or unconscious and took him to a doctor with whom Hunter had an account for any occupational injuries. (*Id.*). The doctor diagnosed a lumbar strain, with no need for physical restrictions. (Docket Entry No. 18, Ex. 8 at 2). Cristain asked that he be allowed to stay home the following day, a Friday. (Docket Entry No. 17, 4). Edmonds initially suggested that Cristain could come to work and perform some limited duties, but after repeated requests allowed him the day off. (*Id.*) Edmonds went to Cristain's home on February 8, a Sunday, to check on him, and drove him to work the following morning. (*Id.*). Edmonds filed a claim with Hunter's workers' compensation carrier that day, February 9, after Cristain again asked permission to go home to recover from his pain. (*Id.* at 4–5).

Over the following weeks, Edmonds continued to take Cristain to follow-up medical appointments. (Docket Entry No. 17 at 5). On February 13, 2015, Edmonds offered Cristain a modified-duty position of "Flow Monitor." (*Id.*). Hunter specifically created the position to accommodate Cristain during his recovery. (*Id.*). The new duties were more ministerial in nature, including monitoring and documenting manufacturing projects and communicating the progress on them to the supervisor. (*Id.*). Cristain started these duties on February 16, 2015. (*Id.*).

Soon after starting his new position, Cristain received several disciplinary actions. On February 17, 2015, Edmonds reprimanded Cristain after finding him playing on his cell phone in the break room while he was not on a break. (*Id.* at 8). When this happened again on February 18,

Edmonds said that he would put a written warning in Cristain's file. (*Id.*). On February 19, Edmonds reprimanded Cristain for failing to pick up the paperwork for his Flow Monitor job. (Docket Entry No. 17-1 at 5-6). Edmonds documented this and the previous incidents in an "Employee Warning Notice." (Docket Entry No. 17-2, Ex. G at 17). Cristain denied that he was ever counseled about being on his phone or for failing to pick up paperwork. (Docket Entry No. 17-1 at 6; Docket Entry No. 18, Ex. 1 at 3).

Cristain was terminated on February 20, 2015. (Docket Entry No. 17 at 8-9). The parties offer divergent accounts of what happened that day. Edmonds asserted that he had recently received the results of Hunter's investigation into the February 5 scaffold accident. (*Id.* at 7). The report stated that Cristain had violated Hunter's safety rules by using the scaffold without taking the required training or completing a safety analysis. (*Id.*). Edmonds intended to discipline Cristain about these safety violations. (*Id.* at 9). Before calling him into his office, Edmonds prepared another Employee Warning Notice, leaving blank the sections for "Employee Statement," "Action Taken," and the signature lines. (*Id.*). He intended to mark the box for "Warning." (*Id.*). According to Edmonds, Cristain "became very defensive, loud and aggressive" when told that he was being disciplined. (Docket Entry No. 17-1 at 7). He "yelled at [Edmonds] and called [him] a 'bitch.'" (*Id.*). Edmonds testified that he decided to fire Cristain based on this outburst. (*Id.*). He marked the box for "Dismissal" in the "Action Taken" section of the Employee Warning Notice. (*Id.*). When Cristain refused to sign the form, the Human Resources Manager signed instead. (*Id.*).

Cristain alleged that Edmonds had made comments about his age in the weeks leading up to his termination. (Docket Entry No. 18, Ex. 1 at 3). Cristain specifically alleged that while Edmonds was driving him to the doctor on February 5, immediately after the fall, Edmonds said that he "was only hurting because [he] was old . . . and that [he] wasn't getting better because [he] was

old." (*Id.*). According to Cristain, when he went into Edmonds's office on February 20, he was handed a form marked "dismissal" and told to sign it. (*Id.*). When he asked why, Edmonds told him that he "was old and not worth anything and that [he] had five minutes to leave or he would call the police." (*Id.*). Cristain denied being abusive and using the term "bitch." (*Id.*). Edmonds denied calling Cristain an "old man," saying that he was "useless," or making similar age-based comments. (Docket Entry No. 17-1 at 8).

Cristain filed a charge with the Equal Employment Opportunity Commission and the Fair Employment Practices Agency in July 2015. (Docket Entry No. 18, Ex. 2 at 2). He received a notice of right to sue letter in May 2016 and filed this suit in August 2016. Discovery and this motion followed.

## II.    The Summary Judgment Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

4

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp.*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

**III. Analysis**

    **A. The ADEA Claim**

The ADEA states that "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "A[n ADEA] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009). ". . . '[B]ut-for cause' does not mean 'sole cause.'" *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013). "[A]n employer may be liable under the ADEA if other factors contributed to its taking the adverse action, as long as 'age was the factor that made a difference.'" *Id.* (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010)).

Age discrimination can be proven through direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "Where a plaintiff produces direct evidence of discrimination, he is 'entitled to bypass the *McDonnell Douglas* burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability.'" *Stone v. Par. of E. Baton Rouge*, 329 F. App'x 542, 545 (5th Cir. 2009) (quoting *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995)); *see also McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). "Direct evidence is evidence that, if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996). "In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Stone*, 329 F. App'x at 545 (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001)).[1]

---

[1] The Supreme Court held in *Gross* that the burden of persuasion in an ADEA case, unlike Title VII cases, does not shift to the employer to show that the action would have been taken regardless of age. *Gross*, 557 U.S. at 180. Courts disagree on whether *Gross* applies only to trial or to summary judgment as well. *Compare Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374,

If no direct evidence exists, the court uses the familiar burden-shifting framework under *McDonnell Douglas*. *Jackson*, 602 F.3d at 378. Under *McDonnell Douglas*, a plaintiff alleging discrimination must first make a *prima facie* showing. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). A *prima facie* case of age discrimination is established if a plaintiff shows that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted). The burden then shifts to the employer to articulate some legitimate nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802; *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). If the defendant meets the burden of production, the plaintiff may show that the stated reason was pretextual "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378 (internal quotation marks omitted). "[T]he trier of fact may . . . consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks and alteration omitted).

---

378 (5th Cir. 2010) (*McDonnell Douglas* burden shifting applies for circumstantial age-discrimination evidence post-*Gross*), *with Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) (*Gross* precludes burden-shifting for direct evidence at summary judgment); *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203-04 (11th Cir. 2010) (*Gross*'s "but-for" test precludes "same decision" defense). The Fifth Circuit has not decided the question for direct evidence cases. Because Hunter's motion in this case fails under either the *Gross* standard or the less strict *Stone* standard, this court does not need to decide the question either.

Workplace comments provide evidence of discrimination if they are: "1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Id.* at 546 (quoting *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 343-44 (5th Cir. 2002)) (alterations in original). The four-part test applies when comments are offered as direct evidence of discrimination. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 134). Comments that do not meet all of these criteria are "stray remarks" that fail to create a factual dispute about the employment decision. *Patel*, 298 F.3d at 343. "Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct . . . a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Reed*, 701 F.3d at 441 (citing *Laxton v. Gap*, 333 F.3d 572, 583 (5th Cir. 2003)).

Cristain was discharged, he was qualified for the position, and he was over 40 when he was fired. There is no allegation that he was replaced.[2] Cristain has cited as direct evidence of age discrimination workplace comments, including the comments Edmonds allegedly made on the day of the injury and the day of the termination, and previous comments by Cristain's team leader. (*See* Docket Entry No. 18, Ex. 2 at 3). Assuming the truth of Cristain's account for the purpose of this

---

[2] Hunter stated that it did not replace the position of "Flow Monitor" after Cristain's termination because it created that position specifically for him after he was injured. (Docket Entry No. 18, Ex. 14 at 12).

motion, Edmonds's statement that Cristain was "old and not worth anything" was not a "stray remark." The word "old," the coincidence in time with the termination, the fact that the speaker had the authority to and did terminate Cristain, and the fact that the statement allegedly responded to Cristain's asking why he was being terminated, all show a causal connection between the comment and the termination. It is not necessary to determine whether any of the previous alleged comments are direct evidence of discrimination on their own, or to consider Cristain's allegations that other older employees were called names and, in some instances, terminated. (*See id.*).

Hunter has the burden to show that it would have made the same employment regardless of Cristain's age. Hunter has identified and provided evidence of several reasons for the termination: Cristain's insubordination towards Edmonds on February 20; his performance problems as a Flow Monitor; the incidents of his playing on his phone while at work; and the lack of cooperation in the investigation into the February 5 fall and injury. (Docket Entry No. 18, 10, 19). Edmonds's testimony indicates that he was not going to fire Cristain on February 20 until Cristain allegedly became belligerent. Cristain vigorously disputes that he was either counseled or became belligerent. (*See* Docket Entry No. 18, Ex. 1 at 3). As a result, Hunter's evidence does not show that it would have fired Cristain based on any of the proferred reasons other than the insubordination, which is disputed.

The "same actor" inference does not support a different result. There is a strong inference that discriminatory motive is not present when the same agent of an employer fires an employee who had been hired a relatively short time earlier, at close to the same age. *See Brown*, 82 F.3d at 658 (accepting the "same actor" inference that age discrimination was not the motive behind the termination of a 58 year old who had been hired at age 54 by the same supervisor). Less than a year passed between Cristain's hiring and his firing. But evidence does not show that the person who

made the termination decision, Edmonds, also hired Cristain. Edmonds was the Health, Safety, Security, and Environmental Manager, not Cristain's supervisor. The factual disputes and inapplicability of the same actor inference preclude granting summary judgment for Hunter on the basis of the present record.

### B. The Texas Workers' Compensation Retaliation Claim

Under the Texas Labor Code, "[a] person may not discharge or in any other manner discriminate against an employee because the employee has . . . filed a worker's compensation claim in good faith . . . ." Tex. Lab. Code § 451.001(1). "A *prima facie* case of retaliation consists of the following elements: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision." *West v. Maintenance Tool and Supply Co., Inc.*, 89 S.W.3d 96, 105 (Tex. App.—Corpus Christi 2002, no pet.). As with the Age Discrimination in Employment Act, the plaintiff must show that the discharge would not have occurred when it did "but for" the filing of the claim, but the plaintiff does not need to show that the filing was the sole reason for the termination. *Lee v. Haynes & Boone, L.L.P.*, 129 S.W.3d 192, 196 (Tex. App.—Dallas 2004, pet. denied). Under Texas law,

> [c]ircumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false.

*Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 451 (Tex. 1996); *See also Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015). "Texas employs a burden shifting analysis for workers compensation retaliatory discharge claims under section 451.001." *Parker v. Valerus Compression*

10

*Servs., LP*, 365 S.W.3d 61, 66 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The *McDonnell Douglas* burden-shifting framework applies. *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.).

The first two elements of Cristain's *prima facie* case are undisputed: a workers' compensation claim was filed on his behalf; and he was subsequently terminated. Hunter disputes that Cristain has shown the necessary causal link. (Docket Entry No. 17, 17). But the timing— the termination occurred 15 days after the injury, and only 11 days after the claim filing—the fact that the employer was obviously aware of the claim—Edmonds filed it for Cristain's behalf—and the evidence of Edmonds's comments on the day of the accident made on the way to the doctor's office, all support an inference of retaliatory motive.

Cristain also points to evidence of Hunter's actions towards other employees who filed workers' compensation claims. Between January 2012 and December 2015, 12 other Hunter employees filed claims for work-related injuries. (Docket Entry No. 18, Ex. 14 at 10). Four of the 13 were terminated within 30 days of injury; eight were terminated within three months; and 10 were terminated within five months. The reasonableness of a causal inference weakens as the time between injury and termination increases. *See, e.g., Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) (15 to 16 months is too long); *Matthews v. City of Houston Fire Dept.*, 609 F. Supp. 2d 631, 649 (S.D. Tex. 2009) (three years is too long). But taken together, these data support an inference that Hunter disfavors workers' compensation claims. Cristain also points to Hunter's deviation from its own policy of using a "progressive disciplinary procedure." (Docket Entry No. 17, 6). Cristain had not received any disciplinary action before February 2015, when he was fired within three days of the alleged first disciplinary warning (which Cristain denies receiving).

Hunter's proffered reasons for the termination are Cristain's insubordination towards Edmonds, his performance problems, his playing on his phone during work, and his lack of cooperation in investigating his injury. As noted, the reasons other than the February 20 outburst are reduced in significance by Edmonds's statement that on that date, he intended only to reprimand Cristain until he was insubordinate. Cristain has raised factual disputes as to whether these reasons are pretextual by disputing that he was insubordinate towards Edmonds, that he was counseled for performance problems or for playing on his phone, and that he was uncooperative in the investigation. These disputes, plus the lack of a disciplinary record before February 2015, and Hunter's deviation from its own progressive disciplinary procedures, add to the inability to grant summary judgment on the present record.

## IV. Conclusion

Hunter's motion for summary judgment, (Docket Entry No. 17), is denied. Docket call will proceed as scheduled on **July 6, 2017,** at **2:00 p.m.** (Docket Entry No. 16).

SIGNED on June 19, 2017, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge